Deployed in the first case is 085092, precision pine v. Timber v. United States. May I please report? This case was seriously amiss. When relying on a putative warranty and implied duties, the trial court failed to give effect to the express allocation of risk in the parties' contracts. It never got back on track. The trial court erred in its ruling on liability. It erred by adopting a flawed post-trial process, and it erred in its determination of damages. Although I'm going to be focusing first and foremost on the trial court's liability rulings, the procedural and damages issues are also important. You haven't been for how or why this went amiss in your view on the liability questions. Judge Danish decided this case was Scott Timber, right? He did not. So he was hampered, yet we agree with you that the analysis was Scott Timber, that he suggests had not compelled certain results. Is that part of the problem? That is part of the problem, Your Honor. We did, following Scott Timber, seek reconsideration on certain issues, and that was not granted as well. So we did try to bring Scott Timber into the case and correct earlier findings based on Scott Timber, at least in certain respects, but that obviously didn't happen. Now, this court can resolve this matter by addressing three issues. First, whether there is a warranty that was breached by the Forest Service in Clause CT 6.25. Second, whether the Forest Service was authorized to suspend precision blinds contracts in August 1995 by Clause CT 6.01. And third, whether the trial court's failure to make certain factual findings, factual findings that the court itself recognized to be necessary, precludes recovery for an alleged breach of the implied covenant of good faith and fair dealing. Can I ask you just sort of some basic questions about what's going on here? Certainly. Is it your view that the reasonableness of the Forest Service conduct in terms of delay has no bearing, given the language of the contracts, that that is not, should not be a factor either in the context of the implied covenant of good faith or the express warranty? Well, we would distinguish, Your Honor, between the initial suspension and the duration of the suspension. The initial suspension is something that you don't go back behind it. There is a simple trigger for that in the contract, and that is a court order from the Court of Competent Jurisdiction. And when that trigger is met, the Forest Service has authority to suspend to comply with that court order. However, this court recognized in Scott and Timber that that clause, that authority, doesn't mean that the contract's going to be permanently or indefinitely suspended. And so at some point, there will be a point reached where the suspensions have gone on for so long that it's inconsistent with good faith and fair dealing. Now, we don't believe that happened here. And more fundamentally, the trial court didn't make the necessary findings to establish when the duration of the suspension would have breached any implied covenant of good faith and fair dealing. But we're dealing with, what, 135 days versus 400-something? Well, let's talk about that specifically, Your Honor. I mean, first, let me ask you, is there any dispute that the delay is attributable to the Forest Service? What the delay is attributable to, Your Honor, is getting the district court to lift its injunction. And that delay occurred in the context of discussions between the Forest Service and the Fish and Wildlife Service pursuant to the Endangered Species Act. And so this is in the government's sovereign capacity, not in its contracting capacity, that this is going on. But the question is, did the course of those consultations, can you infer from the course of those consultations and the length of those consultations an absence of good faith or a lack of fair dealing? And so we are talking about the government's conduct, but the question is, what do you infer from that? Your Honor, I'm going to start by talking about what we've just been talking about, and that's good faith and fair dealing. The trial court erred in finding a breach of good faith and fair dealing. For more than 20 years, numerous lawsuits have affected the Forest Service's timber sale program. And it should come as no surprise to no one involved in the industry that timber sales can be affected by litigation about environmental complaints. And it was recognized in this reality that in Clause CT 6.1, the parties allocated the risk of a disruption from environmental litigation. Precision Fine agreed to suspend harvesting upon request of the Forest Service to comply with the court order from the Court of Competent Jurisdiction. And the Forest Service agreed to provide Precision Fine additional time to cut the timber commensurate with the length of the suspension. But it seems like you agree that if the delay was somehow unreasonable, then there would be a violation of the breach. Yes, it is possible that if the delay was so long that it was deemed a breach of good faith and fair dealing, that there could be a breach, notwithstanding the original authority to suspend. Why is a delay necessarily a breach of a covenant of good faith and fair dealing? To me, good faith and fair dealing, to breach that is a fairly high wall you have to surmount. You can delay things for reasons that even be wrong, but not necessarily have been in bad faith. Well, that's certainly true, Your Honor, and that is why there is a difficult burden to meet in this case with respect to the length of the suspension. We're starting out from the point that the contract does, by its plain terms, authorize the suspension. And it's also worth keeping in mind exactly what happened here. There was a court order that said suspend timber sale harvesting so you can consult pursuant to the Endangered Species Act. That decision is on shaky ground in light of some subsequent jurisprudence, but that's what happened. And the floor service did that. It consulted, and as soon as the district court allowed it to, it lifted the suspension. So we're talking in terms of the contracting activity, the activity of the contracting model, there's no question that that was reasonable. It was done to comply with the court order, and it was lifted as soon as the court allowed it to be lifted. But there's some intervening things going on here, including didn't the district court kind of take the government to task, the floor service to task, for its delays? I mean, we've got a finding on the record, right, suggesting doesn't that suggest that the government didn't behave appropriately in terms of getting the stay lifted in a timely fashion? Your Honor, we would do that. Yes, there is some language in the district court decision expressing the court's frustration that things didn't move faster. There's no question about that. And that would be evidence that one could present at trial to establish that there was a breach of good faith and fair dealing. You could invoke that as evidence. Now, what we have is a six-week damages trial where there was no evidence that was put on about how long was too long. Isn't that part of the liability versus the damages? I mean, wasn't that something that was begun and ended with Judge Damages' decision? It was not, Your Honor, for a couple of reasons. First of all, we would submit that deciding the question of how long is too long is, as this court described it in September, an intensely factual question. And so resolving that on some of the judgments in the program. Why are you in connection with whether or not there's liability under the contract provisions, not a question of how much damages is awarded? It's a question of both liability and damages, Your Honor. Let me start with liability and the liability decision. The court did not, in its liability decision, say it was reasonable to suspend for 200 days or 300 days. It said for three contracts that were suspended for 60 days that there was no breach. It said that when you reach 135 days, there could be a breach, depending on what additional factual findings are made. And the court, in its summary judgment decision, did say 467 days, which was the length of, I believe, 10 of the suspensions, 10 of the 14, was too long. But it never said how long was too long. And why is that important? You can't award damages based on a breach of good faith and fair dealing without knowing how long is too long. If the suspensions were reasonable for 450 days, you have a very different damages analysis than if the suspensions were reasonable for 300 days or 150 days. So as the trial court is self-recognized, you can't award damages for this sort of claim without actually determining, as a factual matter, how long was too long. Now, where does the problem arise in this case on this? Precision fines simply didn't present any evidence at the damages trial on which the court could base such a ruling. They don't cite anything in its brief. They don't cite anything in response to our arguments, suggesting that there is some factual basis to determine how long the suspensions were reasonable and how long was unreasonable. So there's no basis for awarding damages for this breach without that factual determination and without that factual evidence being presented. It's something on which precision fines were the burden of proof. And it's something that is essential to any judgment for breach of good faith and fair dealing. Now, precision fine does respond in this way. Precision fine says that the suspensions were breached from day one because the Forest Service was at fault for the suspensions. And they argue that as part of their cross-review. The court found that the suspensions were, in fact, legitimate on day one, that they were done pursuant to CT-601 because there was a court order and that was a trigger for authority under that clause. But precision fine argues that when the Forest Service is at fault, it cannot invoke CT-601. Well, there are many problems with that argument. First of all, it would defeat the very purpose of the clause. CT-601 is an express allocation of risk, recognizing that contract performance may be disrupted by environmental litigation. And it says what will happen by both parties. The Forest Service, in fact, provides compensation for out-of-pocket expenses under the clause. And the clause even says that it's the sole and exclusive remedy in the event of a suspension. Additionally, no language in the clause itself actually supports the idea that you can't suspend if, in some sense, the Forest Service was at fault. The clause is unequivocal. It's the only thing necessary to trigger the clause, at least under the subpart we're talking about, is a court order. And, in fact, this court found that CT-601 authorizes suspensions in its Scott-Timmer decision. And the court didn't analyze who was at fault for the suspension in doing that. It simply looked at the clause. In addition, such an interpretation would render the clause meaningless, because a court will only enjoin the Forest Service from proceeding with its Timmer sales in the event that it concludes that there was some error. That's inherent in the standard for injunctive relief. Do you want to make a motion or a vote? Yes, sir. I would. Thank you. Thank you for pointing that out. Good morning, and may it please the court. Mr. Harrington has presented a recitation- Can you tell us your name, sir? My name is Richard Gaykin, appearing on behalf of the, I believe, precision-finding Timmer. Mr. Harrington has presented a recitation of an interpretation of the opinions, which I don't think is warranted by the language of those opinions itself. I'll start with his position that the trial court, Judge Damage, did not make a finding as to how long was too long. I would refer the court to Denden at page 37. How is there a breach in the express form? It's expressed as 6.5. Clause CT 6.25 states that the Forest Service has identified all protective measures necessary for the protection of species listed under the Endangered Species Act. And it sets forth in the body of the clause what those measures are. And, in fact, did specify with respect to the Mexican spotted owl, the species at issue in this case, certain protective measures. You used the word all. I don't see all. Well, as Judge Damage found, that is a necessary part of the clause. Well, the statement in the clause would be meaningless without it, in that if the Forest Service was aware of other measures that were necessary and yet did not include them, that would be unreasonable and breach its duty to fully apprise its contractor under the clause. Returning to Mr. Herrington's point that Judge Damage never said how long was too long, quite clearly, at the end of page 37, the court said, and this goes to the point of whether there was suspension of authority under CT 601, the court said that it was unreasonable for the Forest Service to suspend after the issuance of the Ninth Circuit opinion on Pacific Rivers and that the Forest Service was culpable for the suspension of all 14 contracts. The court then went on to look at the Forest Service's action after the order was entered and found that the Forest Service should have, after the issuance of the Ninth Circuit opinion on Pacific Rivers, should have been gathering information so that it could engage in consultation. It didn't do that, and that prolonged the suspension for 60 days. The court found right there, and this is on addendum page 37, that the two-month delay between the district court's order and the initiation of formal consultations was unreasonable. So the court did make the finding. It found a breach with respect to all the contracts issued here, and it found specifically within 60 days that that breach had occurred. Nothing else was necessary. Let me go back to Judge Rory's question, I think, which is, let's assume, let's assume hypothetically that we were to conclude that there was no express warranty. In the 625 provision, are we, can we then go ahead and find that there's no implied duty of good faith and fair due in the other provision? Or is that, I mean, that implied duty of good faith in 01 is predicated on finding an express warranty in 01? No, I think those are separate. I think those are separate issues, Your Honor. And the idea, and the government has framed the issue in terms of good faith and fair doing. Actually, so just to be clear on what your answer is, you're suggesting that even if we were to find no express warranty, we could still find a breach of implied duty of good faith? Correct, Your Honor. And what's the authority for that? It seemed to me that Judge Damage fully suggested in a footnote that his finding of an implied duty was predicated on an express warranty. He found two separate breaches, Your Honor. One under C625, and then one with respect to the suspension, the warranty issue, whether what had been warranted was correct. Then he found a breach with respect to the position of the suspension itself. That was just the part I was reading with respect to the indentment on page 37, in that by causing the suspension, the Forest Service was culpable for the breach, wholly apart from the warranty issue. And there are seven contracts that were breached with respect to the warranty, whereas there are 11 contracts that were breached with respect to the causation and the duration of the suspension. So I think there are two separate issues. If I may go on, Your Honor, the government's argument with respect to the implied duty of good faith, the argument we presented in the trial court and which Judge Damage addressed was the implied duty to cooperate and not to hinder. By raising the issue of good faith, the government tries to bootstrap the idea that there's a higher standard of proof here necessary. That is not the case. The issue, as this court found in Scott-Timber, is simply one of reasonableness. And on the record before Judge Damage had summed her judgment, the record was abundantly clear that the Forest Service's actions had been unreasonable. At what point? I mean, you know they've got 135 days. Well. And they judged 400-something. At what point was it? The point I just read to you. At the end of page 37, Judge Damage found it was unreasonable within 60 days. It said it quite plainly. Within 60 days following 135 days? No, Your Honor. I'm sorry to interrupt. No, Your Honor. 60 days from the issuance of the district court's order in Silver Creek. The government should have, in Judge Damage's opinion, the government should have, as soon as the Pacific River's opinion came down in the Ninth Circuit, should have initiated consultation at that time. They didn't do it. They waited for more than a year and waited for a court order before doing that. Judge Damage said that was unreasonable. And even if they didn't do it immediately, they should have at least been preparing to do it, and they didn't do that. And then based on that, Judge Damage found on page 37 of our addendum that the six months for them to gear up to even begin consultation was unreasonable. So the 135 days, I don't, and it's our position on cross-appeal, should this court reach it, it's a conditional cross-appeal, that the 135 days is simply incorrect. And as this court found in Scott Timber, the Endangered Species Act is not incorporated in the contract. So to give the government the benefit of 135 days under the very statute that they failed to follow and then say they're entitled to that 135-day free pass while my client is suspended, makes no sense at all. I don't know that I'm clear. I mean, I think you, don't you want to, you would want to incorporate into the contract all of these statutory and regulatory requirements, do you not, except for the one that gives them 135 days? I don't think we need to incorporate the statutory requirements into the contract. The Clause C-625 indicates to the contractor, and there's evidence in the record that the contractor relied on the provisions of C-625, there's a declaration in the trial court, that the government had done what was necessary to protect endangered species. Great, we relied on that. Whether the entire statute is incorporated, we don't need that. And in this court, it's already held that it's not incorporated. So unless the court is going to revisit that position, it's been decided. And C-625 says the Forest Service may either cancel or unilaterally modify this contract or provide additional protection regardless of when such facts become known. That's correct. Doesn't that cover the situation? Not at all, Your Honor. There's a couple of points here. First, there was no cancellation of modification. There was a 467-day suspension. There's no authority for that under the clause, and this court held that in Scott-Timber. The C-625 provides no suspension authority. So, and as far as when such facts become known, that's fine as long as those facts are not known pre-award. Let's go back to Judge Lori's question. The Forest Service can't simply fail to do what's required to know if species are on the sale area and then say, we've identified all the necessary protection areas. It's analogous to a defective specifications case, and Judge Danvers alludes to that, the Sparing Doctrine, in that if the government's going to say, here's how you can go forward, here's what you need to do so that the contract can be completed and avoid problems with dangerous species, it darn well better know or have some reasonable basis in fact for making those statements because contractors, as the declaration from Mr. Porter indicated in the trial court, they rely on these. They look at these things because it determines when they can harvest and when they can't harvest. So they need to know that those, or they believe those are accurate, and that's an obligation that's put on the government, and the government is fully obliged to comply with it. And by stating in the contract that it's done so, my client relied on it. Going back to Mr. Harrington's argument that CT601 would be meaningless under our interpretation, that's not correct. It could apply to any court order not caused by the government, and it's an elementary black-letter proposition of law that if you prevent your own performance, you can't rely on that act to absolve you of liability, and the case law in this circuit is dead on that. I'd start with the Sechinger case out of the Supreme Court, but even George Fuller, Ozark Dam, where there was a clause that attempted to limit the government's liability, and the predecessor of this court said, No, you can't. That's not valid here, and that's the same position that Judge Danish and Judge Weiss in a case called C.J. Vedders took, and relying on Ozark Dam, Judge Weiss held. The rule in this circuit, then, is that the efficacy of a limitation of liability clause does not extend to those situations where the breach, whether total or partial, arises out of offense within the government's control. And here, as Judge Danish laid out in exquisite detail in 14 pages, this was entirely within the government's control. In fact, it's our position that their obligation to consult under the ESA was absolutely clear in 1993 at the time of the listing of the Mexicans spotted out. They, the divorcees, engaged in a protracted attempt to avoid that obligation. You're saying they should have known that even before the Ninth Circuit's decision? It's our position, yes, Your Honor, that as of 1993, the Endangered Species Act is quite clear about what consultation is necessary. The Forest Service had always consulted on its forest plans at the time they were issued, believing them to be agency action. The regulations require it. There was another earlier ruling in the Ninth Circuit shortly after the Mexicans spotted out issued Lane County, which is addressed in our briefs, which dealt with the Bureau of Land Management. Same thing, forest plans and health, those must be consulted on under the ESA. And the Forest Service turned a blind eye to that ruling. So there's a 14-page exposition by Judge Danish where it's quite clear that the Forest Service just refused to do what was required of it under the law. And it's our position that that obligation arose in 1993. If I can get back to the issue of good faith and fair dealing, as I mentioned, this court in Sentex held that the implied duties apply equally to the government and the contractor. So there's no heightened standard with respect to the contractor. In other words, the government would have to show bad faith on the part of the contractor before it could reach an implied duty. Similarly here, there's no obligation for the contractor to show bad faith when it's a simple breach of the implied duties, which are incorporated into the contract as well. This case is a whole lot different than the Sentex case, right? In terms of what went on. Is that the case where the government turned around after getting certain concessions and getting Congress to get rid of tax breaks? It was a brawny litigation case, Your Honor, yes. And the government's dealings there, in my view, are clearly different than the government's dealings in this case. It seems like quite an intentional thing to switch and get people to do something and turn around and do it. And that seems like a different course of conduct than what we have here. I'd like to point to a timber contract case where the court found that the standard was reasonable. It's got timber. The breach of contract simply came down to a question of a reasonableness determination. I have not seen a case in any court saying that whether or not a party to a contract acted reasonably, that it is entitled to a thumb on the scale, that it must also be found to have acted in bad faith or with malice. It's simply not required. Scott Timber makes no reference to that. So you're saying the obligation that arises under the duty to act in good faith is one of reasonableness? I think the government or that the court may be being confused by Mr. Harrington's sleight of hand here by making the argument of the implied duty of good faith and fair dealing. By saying good faith, we never argued the government acted in bad faith here. We argued simply that there's a breach of implied duties that are a part of every contract and that those duties are to cooperate with the other party and not to hinder the other party. And the government, as Judge Damisch found in spades, breached both of those duties beyond question. There's 14 pages of factual findings directly on point showing how unreasonable the government was here. I will say, I hesitate to go here because I don't think we need to, but even if this court were to find that there needed to be a heightened standard of bad faith, you could find it in the facts as discussed by Judge Damisch. In fact, at one point, the Forest Service was in a position of being placed in contempt of court for failing to abide by court orders directing it to engage in the very consultation it should have entered into back in 1993. If that kind of evasion of court orders doesn't rise to the level of bad faith, I'm not sure what does. But again, we didn't allege that. I don't think we need to prove that in this case. It's a simple breach of contract case. All right, thank you. Okay, Judge Mike. I had, Your Honor, if I might. I had reserved a couple minutes for both of them. Okay, thank you. Thank you, Your Honor. First, I just want to touch on something that counsel mentioned, and he suggested that the case doesn't really involve an aspect of good faith and fair dealing. It's one of an implied duty not to hinder. Well, the precision-buying court recognized that unimplied duty not to hinder is a subspecies of good faith and fair dealing. The Sentex decision talks about hindrance in the context of its discussion of good faith and fair dealing. And Section 205 of the restatement, which this court cites in Sentex and has cited in other decisions, describes, it says in one of the comments to that section, the complete catalog of types of bad faith is impossible, but the following types are among those which have been recognized, interference with the failure to cooperate in the other party's performance. It talks about exactly what we're talking about here. So there's no question that what we're talking about is, one, a good faith and fair deal. Now, Mr. Gittin talked briefly about the CT 6.25 clause. As this court found in Scott-Denver, there's simply no warranty in that clause, but another point is worth making on that. Even if there were some sort of warranty, some sort of affirmative representation in that clause, there was no breach. It's undisputed that after the consultations between the Forest Service and the Fish and Wildlife Service, there was no change to any of Precision Finance contracts that was made. The listed measures in that clause were accurate and correct and didn't change, and that's not surprising because the Forest Service had actually consulted on specific contracts,  The other point, another point Mr. Gittin made was that he said that there was a clear obligation under the Endangered Species Act. Well, first of all, he conceded that the Endangered Species Act is not incorporated into his contracts, and unless there's incorporation of statute or regulation into a contract, that is not a breach of contract, even if there is a failure to comply with the statute or regulation. What we're talking about is, is there a breach of any of the terms of the contract? And there's been no showing of a breach of warranty. There's been no showing that the suspensions were improper on day one because there was a court order, and that was the trigger under CT601. Your Honor, without going into the details, I did mention at the outset I was going to focus first and foremost on liability. I haven't spoken to our damages and our procedural issues because the time has been spent on liability, but I would simply emphasize to the Court that those are important issues and that we believe in the merits of those issues, so I won't go into them since we haven't spoken about them before at this point. Thank you. Thank you, Your Honor. As the Court is aware, we have filed a conditional cross-appeal in this case on three issues, the first being that, as we discussed a little bit before, that the consultation should have taken place in 1993. The second is that the 135-day consultation period is not required or a correct ruling given that the findings will judge damage in the trial report that the breach occurred within 60 days. And we also have appealed on the issue of the coverability of some of the costs. We won't get into that because we haven't touched on it yet. Well, I was just referring to my conditional cross-appeal. Okay, very good, Your Honor. I just wanted to reiterate as well with respect to the warranties. The breach of warranty was with respect to seven of the contracts. It's a wholly separate breach from the breach of the implied duty not to hinder, which went to 11 of the contracts. As determined by Judge Damage, were this Court to agree with us on our conditional cross-appeal that the breach or that the Forest Service should have consulted in 1993 pursuant to the ESA, that would bring in the other seven contracts under the breach of warranty argument. Because at that time, all of the contracts would be implicated by the government's failure to abide by the warranty in clause C625. All right, thank you.